UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **Metrocrest Hospital Authority,** § § § *Plaintiff* § § **v.** § § **Sana Healthcare Carrollton, LLC, d/b/a** § **Carrollton Regional Medical Center,** § § *Defendant* § § | Civil Action No. 4:25-CV-573-SDJ |

**DEFENDANT'S MOTION FOR DISMISSAL OF
PLAINTIFF'S ORIGINAL PETITION AND BRIEF IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Sana Healthcare Carrollton, LLC, d/b/a Carrollton Regional Medical Center ("Sana") files this Motion for Dismissal of Plaintiff's Original Petition and Brief in Support ("Motion") requesting that the Court dismiss Metrocrest Hospital Authority's ("MHA") single cause of action, its request for declaratory relief. In support of this Motion, Sana shows the Court:

## I.     INTRODUCTION

Since the beginning of 2024, Sana and MHA have engaged in contentious state court litigation in Cause No. 24-0056-41, *Sana Healthcare Carrollton, LLC, d/b/a Carrollton Regional v. Medical Center Metrocrest Hospital Authority*, in the 431st Judicial District Court of Denton Count, Texas ("State Court Action"). The root issue in the State Court Action was whether a purchase option clause in the parties' lease agreement allowed Sana to purchase the Carrollton Regional Medical Center Hospital (the "Hospital") by itself without also purchasing four medical office buildings (the "MOBs").

In the State Court Action, Sana argued that it would have been able to obtain financing to purchase only the Hospital (for $16,000,000) but for MHA's refusal to sell the Hospital to Sana. Sana never contended that it obtained financing for the Hospital and MOBs (for $31,000,000). Since Sana currently leases the hospital and with litigation pending, it notified MHA that it intended to exercise its lease renewal option, which provides:

> 2.3     **Renewal Term**. Provided there is no Tenant Default at the time of exercise, Tenant shall have the right to renew the Lease for one (1) additional Term of five (5) years, if Tenant is unable to obtain commercial reasonable financing to exercise the Purchase Option as addressed herein. Tenant will be required to deliver written notice of its election to exercise this Renewal option on or before June 30, 2024.

After Sana notified MHA of its intent to exercise the renewal option, the trial court determined that Sana was required to purchase both the Hospital and MOBs and therefore, did not properly exercise the purchase option. Sana's appeal of the trial court's judgment is currently pending in the Second Court of Appeals in Fort Worth.

Days after Sana filed its Notice of Appeal, MHA filed this action alleging a single cause of action for declaratory judgment seeking the Court's declaration that "[b]ecause Sana judicially admitted that it was able to obtain commercially reasonable financing, it has no right to exercise the renewal option provided for in the Lease."[1] Tellingly, MHA's Original Petition fails to identify this alleged "judicial admission."

MHA's claim for declaratory judgment should be dismissed because (1) the lawsuit does not provide Sana with fair notice of Sana's alleged judicial admission, thereby failing to meet the requirements of Rule 8(a)(2); (2) there is no controversy that Sana could not obtain financing for both the Hospital and MOBs; (3) the actual disputed issue—whether Sana could purchase the

---

[1] MHA's Original Petition, ¶ 14.5.

Hospital by itself—is subject to the State Court Action and therefore, MHA's claim is barred by res judicata; and (4) MHA pleaded in the State Court Action that Sana was not able to obtain financing to exercise the purchase option and therefore, is judicially estopped from arguing in this case that Sana was able to obtain financing. Alternatively, the Court should abate this case pending the Court of Appeals' resolution of the underlying appeal because if Sana prevails, the case is moot.

## II. STATEMENT OF THE ISSUES

Pursuant to Local Civil Rule 7(a)(1), the issues to be decided by the Court in connection with this Motion are as follows:

1. The complaint against Sana should be dismissed under Rule 12(b)(6) for failure to state an actionable claim because the lawsuit does not provide Sana with fair notice of the grounds upon which MHA's claim rests, thereby failing to meet the requirements of Rule 8(a)(2).

2. The complaint against Sana should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because MHA fails to plead that a controversy exists sufficient to support MHA's declaratory judgment claim.

3. The complaint against Sana should be dismissed with prejudice under Rule 12(b)(6) because MHA's claim is barred by res judicata.

4. The complaint against Sana should be dismissed with prejudice under Rule 12(b)(6) because MHA's claim is barred by judicial estoppel.

5. Alternatively, the case should be abated pending the Court of Appeals' resolution of the underlying state court judgment, which may render it moot.

### III.    FACTUAL BACKGROUND

For the purposes of this Motion, Sana sets forth the following factual background and requests the Court take judicial notice of the various records attached as exhibits hereto.

**A.    MHA leases the Hospital to Sana with a purchase option.**

MHA owns the Hospital and four MOBs. On November 19, 2019, the parties executed a written Lease Agreement granting Plaintiff the right to lease the Hospital from MHA (the "Contract").[2] The Lease granted Sana the right to lease only the Hospital from MHA, but included a Purchase Option and Right of First Offer Clause (the "Purchase Option Clause") and a Purchase Option Exhibit attached as Exhibit "F" to the Contract. Under the Purchase Option Clause, SANA agreed to buy and MHA agreed to sell either (1) the Hospital and the MOBs for $31 million, or (2) just the Hospital for $16 million:

> 4.3    **Purchase Option** and Right of First Offer. For the right to purchase the hospital and the four medical office building on campus (the "MOBs") at any time during the first three years of the Lease Term (the "Purchase Option"), Tenant shall make a Purchase Option payment upon Lease execution of ONE MILLION AND NO/100 DOLLARS ($1,000,000.00) (the "Purchase Option Payment"). The Purchase Price under the Purchase Option shall be a total of THIRTY ONE MILLION AND NO/100 DOLLARS ($31,000,000.00) (SIXTEEN MILLION AND NO/100 DOLLARS ($16,000,000.00) for the Hospital and FIFTEEN MILLION AND NO/100 DOLLARS ($15,000,000.00) for the MOBs), (collectively the "Purchase Option Purchase Price"). The Purchase Option Payment shall be credited toward the Purchase Option Purchase Price for the Hospital if the Purchase Option for the Hospital is executed. The Purchase Option on the MOBs may only be exercised if the Hospital is also or has previously been purchased, and closing of the purchase under the Purchase Option must take place within three years of the Lease Commencement Date. (1) If the Purchase Option is not consummated within three years of the Lease

---

[2] *See* Exhibit 1, (Lease). In evaluating a Rule 12(b)(6) motion, the court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the claim. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016). Plaintiff refers to the Lease in ¶¶ 5–8, 13, and 14 of its Original Petition, and the language of the Lease is central to its declaratory claim.

> Commencement Date, unless due to the default of MHA, MHA shall retain the Purchase Option Payment. (2) Tenant will be required to deliver a minimum of three months' prior written notice of its exercise of the Purchase Option. . . .³

The Purchase Option Exhibit sets forth additional requirements to elect the purchase option.⁴ For and in consideration of a $1,000,000.00 payment, the Purchase Option Exhibit provides Sana the right to purchase the Hospital for $16,000,000 and the MOBs for $15,000,000.⁵ It further establishes December 31, 2023, as the expiration of the Option Period, and requires Sana to provide three-month prior written notice of its intent to exercise the Purchase Option.⁶

Sana tendered the $1,000,000 Option Fee on November 20, 2019.

The Lease also includes a renewal option:

> 2.3    **Renewal Term**. Provided there is no Tenant Default at the time of exercise, Tenant shall have the right to renew the Lease for one (1) additional Term of five (5) years, if Tenant is unable to obtain commercial reasonable financing to exercise the Purchase Option as addressed herein. Tenant will be required to deliver written notice of its election to exercise this Renewal option on or before June 30, 2024.⁷

**B.    A dispute arose between the parties regarding whether the purchase option allowed Sana to purchase only the Hospital.**

Sana exercised its option to purchase the Hospital only; however, MHA refused to sell the Hospital unless Sana purchased the MOBs as well. Sana filed the State Court Action against MHA on January 2, 2024, alleging that MHA breached the Lease by refusing to sell the Hospital to Sana.⁸

---

³ *Id*., § 4.3.
⁴ *Id*. at Exhibit "F."
⁵ *Id.* Sana interprets the Exhibit as being consistent with the Lease and allowing Sana to purchase either the Hospital alone or the Hospital and MOBs.
⁶ *Id.*
⁷ *Id*., § 2.3.
⁸ *See* Exhibit 2, Sana's Original Petition, filed January 2, 2024.

On January 26, 2024, MHA filed its counterclaim for declaratory relief stating that Sana failed to exercise the purchase option.[9] MHA amended its counterclaim on April 4, 2025, to include claims to quiet title and for declaratory judgment that it is entitled to retain Sana's $1,000,000 option fee. MHA again amended its counterclaim after Sana's renewal option deadline on August 29, 2024.[10] Importantly, in its third counterclaim, MHA alleged:

> 33. After SANA sent its Email and Letter, SANA failed to secure funds to purchase the Hospital or Property, and SANA was, therefore, not a ready, willing and able buyer.
>
> 34. SANA failed to tender $31 million for the purchase of the Hospital and MOBs or funds to purchase the Hospital, less the $1 million credit for the Option Fee, to Metrocrest.
>
> 35. Each of SANA's failures was through no default of Metrocrest.

[11]

While the lawsuit was pending, Sana served MHA its notice of its exercise of the renewal option.[12]

On March 20, 2025, the Denton County Court signed a Final Judgment whereby it (i) granted summary judgment in favor of MHA on Sana's claims for breach of contract, unjust enrichment, and money had and received, (ii) denied MHA's Motion to Expunge Sana's Notice of Lis Pendens, and (iii) dismissed MHA's counterclaims for declaratory judgment and suit to quiet title.[13] Sana filed its Notice of Appeal on April 18, 2025. The appeal remains pending.[14]

---

[9] *See* Exhibit 3, MHA's Original Answer and Counterclaim, filed January 26, 2024.
[10] *See* Exhibit 4, MHA's Third Amended Answer and Counterclaim, filed August 29, 2024.
[11] *Id.*, ¶¶ 33–34.
[12] *See* MHA's Original Petition, ¶ 12 [Doc. 3]; Exhibit 5, Sana's Exercise of Renewal Option.
[13] *See* Exhibit 6, Final Judgment, filed March 20, 2025.
[14] *See* Case No. 02-25-00183-CV, *Sana Healthcare Carrolton, LLC, d/b/a Carrollton Regional v. Medical Center Metrocrest Hospital Authority*, in the Court of Appeals, Second District of Texas.

**C.     MHA filed the Current Action just days after Sana filed its Notice of Appeal in the State Court Action.**

Just one month after the Final Judgment, MHA filed a second state court action on April 21, 2025 ("New Lawsuit"). The New Lawsuit seeks a declaration that Sana cannot exercise its renewal option because it "judicially admitted that it was able to obtain commercially reasonable financing to exercise the purchase option."[15] Tellingly, the New Lawsuit does not detail the alleged judicial admission or provide where Sana made it.

Further, MHA never raised this claim in its counterclaims against Sana in the State Court Action. Additionally, MHA's New Lawsuit now directly contradicts one of the bases of its dismissed counterclaims in the State Court Action—Sana failing to obtain financing to purchase the Hospital and MOBs or just the Hospital.[16]

## IV.     LEGAL STANDARD

"[D]efendants in all lawsuits must be given notice of the specific claims against them." *Anderson v. U.S. Dep't of Housing & Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008) (citing FED. R. CIV. P. 8(a)(2)).  While the Federal Rule of Civil Procedure ("Rule" or "Rules") 8 "does not require detailed factual allegations," "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The complaint must also include "allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (internal quotations omitted).

Where a complaint fails to state a claim upon which relief can be granted, Rule 12(b)(6) requires that it be dismissed as a matter of law. FED. R. CIV. P. 12(b)(6). The legal principles

---

[15] MHA's Original Petition [Doc. 3], ¶ 14.
[16] *See* Exhibit 4, MHA's Third Amended Answer and Counterclaim, filed August 29, 2024 ¶¶ 33–34.

governing the Court's determination of a Rule 12(b)(6) motion are well-settled. To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face.'" *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). "[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery." *Torch Liquidating Trust ex rel. Bridge Assocs. LLC v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) (internal quotations and citations omitted).

In making this determination, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, the court cannot "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (internal quotations and citations omitted); *see also Iqbal*, 556 U.S. at 678 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Otherwise, dismissal is appropriate.

## V. ARGUMENT & AUTHORITIES

**A.  MHA's claim does not provide Sana with fair notice of the alleged judicial admission.**

MHA's claim for declaratory judgment does not meet the "fair notice" pleading standard. FED. R. CIV. P. 12(b)(6); *Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-56. In its Original Petition, MHA alleges that Sana "judicially admitted that it was able to obtain commercially

reasonable financing to exercise the purchase option."[17] Nevertheless, MHA fails to detail the judicial admission or cite where in the State Court Action the judicial admission occurred. *See Baker v. Great Northern Energy, Inc.*, 64 F. Supp. 3d 965, 971-72 (N.D. Tex. 2014) (dismissing the plaintiffs' breach of contract claim because plaintiffs failed to give fair notice to allege specific contractual provisions that the defendant allegedly breached and for failing).

Without notice of what the alleged judicial admission, Sana cannot properly mount a defense. *See, e.g., Stephens v. Trump Org. LLC*, 205 F. Supp. 3d 305, 312 (E.D.N.Y. 2016) (dismissing plaintiff's defamation claim because "the pleading would require defendants to guess the provision of law or policy that might be in dispute"); *Healthcare Just. Coal. DE Corp. v. Cigna Health & Life Ins. Co.*, No. 3:23-CV-1689 (JAM), 2024 WL 4264391, at *5 (D. Conn. Sept. 23, 2024) (granting defendant's motion to dismiss because of plaintiff's confusing allegations about the scope of emergency medical service claims that were the basis of the lawsuit). Accordingly, MHA's sole claim for declaratory judgment should be dismissed.

**B.     The Court lacks subject matter jurisdiction over MHA's declaratory judgment claim because no controversy exists.**

Furthermore, no controversy exists as to whether Sana was able to obtain financing to exercise the option to purchase both the Hospital and MOBs—the parties do not dispute that Sana could not obtain financing for the purchase of both the Hospital and MOBs, if required to purchase both. Without a justiciable controversy, this Court lacks subject matter jurisdiction. *See ProTradeNet, LLC v. Predictive Profiles, Inc.*, No. W-18-CV-00038-ADA, 2018 WL 11197761, at *2 (W.D. Tex. Dec. 19, 2018) ("Because there is not a controversy between the parties, the Court lacks subject matter jurisdiction over Plaintiff's request for a declaratory judgment.");

---

[17] *See* MHA's Original Petition [Doc. 3], ¶ 14.

*Misczak v. Chase Home Fin., L.L.C.*, 444 Fed. Appx. 35, 35 (5th Cir. 2011) ("A federal declaratory judgment action requires an actual controversy, not one that is 'hypothetical, conjectural, conditional, or based upon the possibility of a factual situation that may never develop.'").[18]

MHA attempts to create a controversy by mischaracterizing Sana's position in the State Court Action, stating "Sana judicially admitted that it was able to obtain commercially reasonable financing."[19] In actuality, Sana pleaded that it was "ready, willing, and able to close its purchase of the Hospital," but that "MHA, however, refused to acknowledge Sana's proper exercise of its purchase option and took no steps toward closing and ultimately failed to close and complete the Hospital sale."[20] In other words, Sana argued that it would have been able to obtain financing but for MHA's refusal to sell the Hospital to Sana—not that it had in fact obtained financing. Sana has never contended that it was able to obtain financing for the Hospital and MOBs.

Because there is no controversy as to whether Sana was able to obtain commercially reasonable financing to exercise the purchase option, MHA fails to plead a proper claim for declaratory judgment. *See Bormio Invs., Inc. v. Wells Fargo Bank, N.A.*, No. 3:15-CV-1888-M, 2016 WL 446659, at *6 (N.D. Tex. Jan. 6, 2016), report and recommendation adopted, No. 3:15-CV-1888-M, 2016 WL 427482 (N.D. Tex. Feb. 4, 2016) (dismissing plaintiff's declaratory judgment claim whereby plaintiff sought to invalidate defendant's deed of trust and lien because plaintiff failed "to state a plausible substantive claim for relief or show that a present genuine controversy exists between the parties"); *Bell v. Bank of Am. Home Loan Servicing LP*, No. 4:11–CV–02085, 2012 WL 568755, at *8 (S.D.Tex. Feb. 21, 2012) (denying plaintiff's request for

---

[18] When a declaratory judgment action filed in state court is removed to federal court, that action is, in effect, converted into one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202." *Empire Indem. Ins. Co. v. N/S Corp.*, 4:11-cv-166, 2012 WL 3904368, at *1 (E.D. Tex. Aug. 10, 2012) (Mazzant, M.J.).
[19] MHA's Original Petition [Doc. 3], ¶ 14.5.
[20] Exhibit 7, Sana's Second Amended Petition, ¶ 15.

declaratory judgment where she had alleged no facts leading to a conclusion that a present controversy existed between her and the defendant); *Turner v. AmericaHomeKey, Inc.*, No. 3:11–CV–0860–D, 2011 WL 3606688, at *5–6 (N.D.Tex. Aug. 16, 2011), aff'd, 2013 WL 657772 (5th Cir. Feb. 22, 2013) (declining plaintiff's request for declaratory judgment where he had not pleaded a plausible substantive claim). Accordingly, MHA's claim for declaratory judgment should be dismissed.

### C. MHA's declaratory judgment claim should have been brought as a compulsory counterclaim in the State Court Action and is therefore, barred by res judicata.

MHA's declaratory judgment action must be dismissed because, to the extent a controversy could exist, it arose out of the same of the transaction or occurrence that is the subject matter of the State Court Action, but MHA failed to raise what would be a compulsory counterclaim. *See* TEX. R. CIV. P. 97. The claim is, therefore, barred by res judicata. Dismissal under Rule 12(b)(6) is proper based on res judicata "when the elements of res judicata are apparent on the face of the pleadings." *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 571 (5th Cir. 2021) (citing *Murry v. Gen. Servs. Admin.*, 553 F. App'x 362, 364 (5th Cir. 2014) (per curiam) (unpublished)).

"A federal court, asked to give res judicata effect to a state court judgment, must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation." *Guardino v. Hart*, No. 22-20278, 2023 WL 3818378, at *3 (5th Cir. June 5, 2023) (quoting *Hernandez v. City of Lafayette*, 699 F.2d 734, 736 (5th Cir. 1983)). Under Texas law, a prior judgment has claim preclusive effect if there is: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Guardino*, 2023 WL 3818378, at *3 (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)). "Texas law affords final judgments res judicata effect even during the pendency of

an appeal." *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 516 (Tex. 2014).

The third prong assesses whether the cases involve the same claims. This includes claims that could have been brought in the first action but were not raised. *Igal v. Brightstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 86 (Tex. 2008). Compulsory counterclaims that were not raised in the prior litigation are similarly barred. *Williams v. Nat'l Mortg. Co.*, 903 S.W.2d 398, 404 (Tex. App.—Dallas 1995, writ denied) ("Where a counterclaim is compulsory, a defendant is barred by the doctrine of res judicata from asserting the claim in a later lawsuit."). A counterclaim is compulsory if: (1) it is a claim within the jurisdiction of the court; (2) not the subject of a pending action; (3) which at the time of filing the pleading the pleader has against any opposing party; (4) it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (5) does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. *See* TEX. R. CIV. P. 97(a); *In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 292–93 (Tex. 2016) (clarifying the reading of Rule 97(a)).

For example, in *Henco Energy-Rick Hendrix Energy, LLC v. Power Rental Sols., LLC*, No. 4:23-CV-03395, 2024 WL 691369, at *4 (S.D. Tex. Feb. 20, 2024), the Southern District of Texas dismissed the plaintiff's new lawsuit because it should have been asserted as a compulsory counterclaim. It found that "[t]he logical relationship test [wa]s met in this case." *Id*. Specifically, the plaintiff's claims against the defendants boiled down to factual allegations that "directly related to the transaction that formed the basis for the state litigation — namely, the MPU sale." *Id*. Because both the state litigation and the current action rose from the same transaction, the Southern District of Texas dismissed the plaintiff's claims, as they should have been asserted as compulsory counterclaims in the state litigation. *Id*.

30233285v1 95720.003.01

Similarly, *In re Hansler*, 988 F.2d 35, 37 (5th Cir. 1993) involved the application of res judicata to claim splitting under the same lease agreement. An equipment lease agreement required the defendant to pay rent payments and return the equipment upon default or termination of the lease. *Id.* at 36. The defendant stopped paying rent and sold its business, including the equipment, to another company. *Id.* The plaintiff sued for conversion of the equipment and received a take-nothing judgment. *Id.* at 37. It also sued in a different forum for unpaid rent. *Id.* at 36. The Fifth Circuit barred the new unpaid rent claim on res judicata grounds, reasoning that the rent and conversion claims arise from the same transaction. *Id.* at 37-38. It found that the plaintiff could have either asserted his rent claim in the Texas court or his conversion claim in the bankruptcy court, but not split his claim between two courts and two theories of recovery to shop for a favorable outcome. *Id.* at 37-38.

Mirroring *Henco* and *Hansler*, the pleadings in both lawsuits establish that MHA's declaratory judgment claim arose from Sana's exercise of its Purchase Option under the Lease. Indeed, MHA's entire basis for relief is that Sana allegedly stated in the State Court Action that it was able to obtain financing to exercise the Purchase Option.[21] Therefore, Rule 97(a) required MHA to assert its new claim for declaratory judgment as a compulsory counterclaim.

Whether MHA's claim could have been filed at the time it initially answered is irrelevant—because the claim ripened during pendency of the State Court Action, MHA had to raise it there. *See In re Quadvest, L.P.*, No. 09-21-00181-CV, 2022 WL 2069210, at *3 (Tex. App.—Beaumont June 9, 2022, no pet.) (the SJRA's accrual theory does not avoid the application of the compulsory counterclaim rule, since "[a] claim which either matured or was acquired by the pleader after filing his pleading may be presented as a counterclaim by amended pleading.") (citing TEX. R. CIV. P.

---

[21] *See* MHA's Original Petition [Doc. 3], ¶¶ 13–14.

97(d)). MHA amended its counterclaims after Sana exercised its renewal option and could have made its new declaratory judgment claim then, but failed to do so. Because MHA was required to assert its claim for declaratory judgment in the State Court Action, MHA's claim is barred by res judicata.

### D.     MHA's claim for declaratory judgment is barred by judicial estoppel.

MHA's declaratory judgment claim is also barred by judicial estoppel. MHA pleaded, as a defense in the State Court Action, the exact opposite of its claim here—that Sana was *not* able to procure financing to execute the Purchase Option.[22]

Judicial estoppel is "a common law doctrine by which a party who has assumed one position in [their] pleadings may be estopped from assuming an inconsistent position." *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988). The purpose of the doctrine is "to protect the integrity of the judicial process" by "prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest." *Id.* (internal quotations omitted); *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993). The doctrine applies when: (1) the party's position is "clearly inconsistent with its previous one"; and (2) the "party . . . convinced the court to accept the previous position." *Gabarick v. Laurin Mar. (Am.), Inc.*, 753 F.3d 550, 553 (5th Cir. 2014).

All prongs are easily satisfied here. First, MHA's contentions in its Original Petition are directly at odds with those taken in its counterclaims in the State Court Action, where MHA argued that Sana did not properly exercise its Purchase Option because it failed to obtain financing:

---

[22] *See* Exhibit 4, MHA's Third Amended Answer and Counterclaim, filed August 29, 2024, ¶¶ 33–35.

> 33. After SANA sent its Email and Letter, SANA failed to secure funds to purchase the Hospital or Property, and SANA was, therefore, not a ready, willing and able buyer.
>
> 34. SANA failed to tender $31 million for the purchase of the Hospital and MOBs or funds to purchase the Hospital, less the $1 million credit for the Option Fee, to Metrocrest.
>
> 35. Each of SANA's failures was through no default of Metrocrest.[23]

MHA's current claim—that Sana could not renew the lease because it was *able* to obtain financing—directly contradicts its State Court pleading.[24] *See Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 398 (5th Cir. 2003) (first prong met where statement made in a previous suit by party's attorney was imputed to that party was clearly inconsistent with party's current position on that same issue).

Second, the Denton County Court, in its Final Judgment, necessarily accepted MHA's prior position that Sana did not obtain financing to exercise its purchase option in resolving the conflict. Specifically, MHA argued in its responses to Sana's Partial Traditional and No Evidence Motion for Summary Judgment that Sana was not a ready, willing, and able buyer because it never tendered payment under the Purchase Option Clause or Purchase Option Clause.[25] The Court accepted MHA's position by denying Sana's Motion for Summary Judgment and highlighting its denial in the Final Judgment.[26] *See In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004) (the second element is met when a court adopts a party's prior position, "either as a preliminary matter or as part of a final disposition") (internal quotations omitted).

---

[23] *Id.*
[24] *See* MHA's Original Petition [Doc. 3], ¶¶ 13–14.
[25] *See* Exhibit 8, MHA's Response to Plaintiff's Partial Traditional Motion for Summary Judgment, filed December 6, 2024, ¶¶ 18(g) and 38; Exhibit 9, MHA's Response to Plaintiff's Partial No Evidence Motion for Summary Judgment, filed December 6, 2024, ¶¶ 11, 15–16, and 21.
[26] *See* Exhibit 6, Final Judgment, filed March 20, 2025.

Because MHA previously pleaded that Sana did not and was unable to obtain financing to exercise the Purchase Option, its declaratory judgment claim that Sana was able to procure financing to exercise the Purchase Option should be dismissed.

**E.     Alternatively, the Court should abate this case pending resolution of the State Court Action appeal.**

Alternatively, because resolution of the pending State Court Action appeal may moot MHA's new claim, this Court should abate the case. If Sana is successful on its appeal, it will be entitled to specific performance allowing it to purchase the Hospital and MHA's claim that Sana could not renew the Lease will be moot.[27] Accordingly, the Second Court of Appeals' decision will be instructive as to whether MHA's declaratory judgment claim has any weight. In the meantime, any decision by this Court may present inconsistent results with the Second Court of Appeals' ultimate opinion and potentially waste judicial resources on a lawsuit that may be rendered moot. *See, e.g., Lamar Co., LLC v. Continental Cas. Co.*, 2007 WL 81876, at *3. (E.D. Wash. Jan. 8, 2007) (granting a stay pending the resolution of the state court appeal, noting that an affirmance in that case would ultimately moot the controversy in the federal action and render any further action in the federal suit a waste). Sana, therefore, moves to abate the case in the alternative to its Motion to Dismiss.

## VI.    CONCLUSION

Because (1) the lawsuit does not provide Sana with fair notice of Sana's judicial admission, thereby failing to meet the requirements of Rule 8(a)(2); (2) there is no controversy that Sana could not obtain financing for both the Hospital and MOBs; (3) the actual disputed issue—whether Sana could purchase the hospital by itself—is subject to the State Court Action and therefore, MHA's

---

[27] *See* Case No. 02-25-00183-CV, *Sana Healthcare Carrolton, LLC, d/b/a Carrollton Regional v. Medical Center Metrocrest Hospital Authority*, in the Court of Appeals, Second District of Texas.

claim is barred by res judicata; and (4) MHA pleaded in the State Court Action that Sana was not able to obtain financing to exercise the purchase option and therefore, is judicially estopped from arguing in this case that Sana was able to obtain financing, MHA's claim for declaratory judgment should be dismissed. Alternatively, Sana requests that this Court abate this case while Sana's appeal in the Second Court of Appeals is pending.

Dated: June 6, 2025

                                        Respectfully submitted,

                                        **CONDON TOBIN SLADEK SPARKS NERENBERG, PLLC**

                                        */s/ Aaron Z. Tobin*
                                        **Aaron Z. Tobin**
                                        Texas Bar No. 24028045
                                        atobin@condontobin.com
                                        **Faisal Al Alam**
                                        Texas Bar No. 24121357
                                        falalam@condontobin.com
                                        8080 Park Lane, Suite 700
                                        Dallas, Texas 75231
                                        Telephone: 214-265-3800
                                        Facsimile: 214-691-6311

                                        **ATTORNEYS FOR DEFENDANT**

### CERTIFICATE OF CONFERENCE

      Counsel for Sana attempted to confer with counsel for MHA regarding the abatement of MHA's lawsuit on June 6, 2025 *via* email.  No agreement could be reached because counsel for MHA never responded back to Sana's explanation for the need to abate MHA's lawsuit, thereby leaving an open issue for the court to resolve.

                                        */s/ Faisal Al Alam*
                                        Faisal Al Alam

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2025, a true and correct copy of the foregoing pleading has been served on counsel for Plaintiff in accordance with the Federal Rules of Civil Procedure.

*/s/ Aaron Z. Tobin*
Aaron Z. Tobin