# EXHIBIT 8

v.

CAUSE NO. 24-0056-431

| | | |
|---|---|---|
| SANA HEALTHCARE CARROLLTON, | § | IN THE DISTRICT COURT |
| LLC, d/b/a CARROLLTON REGIONAL | § | |
| MEDICAL CENTER | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | 431st JUDICIAL DISTRICT |
| | § | |
| METROCREST HOSPITAL | § | |
| AUTHORITY | § | |
| | § | |
| Defendant. | § | DENTON COUNTY, TEXAS |

**DEFENDANT'S RESPONSE TO**
**PLAINTIFF'S PARTIAL TRADITIONAL MOTION FOR SUMMARY JUDGMENT**

Defendant Metrocrest Hospital Authority ("Metrocrest") files this Response to Plaintiff, SANA Healthcare Carrollton, LLC d/b/a Carrolton Regional Medical Center's ("SANA") Partial Traditional Motion for Summary Judgment ("Motion") and respectfully requests that this Court deny SANA's Motion because SANA cannot show that Metrocrest breached the Lease under the terms of the Lease and/or Purchase Option Agreement, SANA did not exercise the option to purchase, and SANA cannot show that it was ready, willing, and able.

### I.    OBJECTIONS TO SANA'S EVIDENCE

1.    Metrocrest objects to SANA's Exhibit 1, Krishan Surapaneni Declaration in Support Plaintiff's Motion for Summary Judgment, ("Declaration"), and all exhibits attached thereto. Tex. R. Evid. 902(10) provides:

> ***Business Records Accompanied by Affidavit.*** The original or a copy of a record that meets the requirements of Rule 803(6) or (7), if the record is accompanied by an affidavit that complies with subparagraph (B) of this rule and any other requirements of law . . ..

**(B)** *Form of Affidavit.* An affidavit is sufficient if it includes the following language, but this form is not exclusive. The proponent may use an unsworn declaration made under penalty of perjury in place of an affidavit.

1. I am the custodian of records [*or* I am an employee or owner] of _____ and am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities.

2. Attached are ____ pages of records. These are the original records or exact duplicates of the original records.

3. The records were made at or near the time of each act, event, condition, opinion, or diagnosis set forth. [*or* It is the regular practice of _____ to make this type of record at or near the time of each act, event, condition, opinion, or diagnosis set forth in the record.]

4. The records were made by, or from information transmitted by, persons with knowledge of the matters set forth. [*or* It is the regular practice of _____ for this type of record to be made by, or from information transmitted by, persons with knowledge of the matters set forth in them.]

5. The records were kept in the course of regularly conducted business activity. [*or* It is the regular practice of _____ to keep this type of record in the course of regularly conducted business activity.]

6. It is the regular practice of the business activity to make the records.

2.    SANA's Declaration only includes parts of subparts (1) and (2) and subpart (5). Otherwise, the Declaration includes no other language identified in rule 902(10)(B). It does not state that the declarant is familiar with the manner in which SANA's records are created or maintained; it does not state the number of pages attached to the Declaration; it does not state when or where the records were made or whether it was SANA's regular practice to make the records; it does not state the records were made by persons with knowledge or that it was SANA's regular practice to make such records from someone with knowledge; it does not state that it is SANA's regular practice to make the records. *See* Tex. R. Civ. P. 902(10)(B)(1), (2), (3), (4), (6).

3.    Further, "[a]n affidavit must be direct, unmistakable, and unequivocal as to the facts sworn to. It must in some way show that the affiant is personally familiar with the facts so that

he could personally testify as a witness. An affidavit made on 'knowledge and belief' is insufficient as an affidavit unless authorized by special statute." *Slater v. Metro Nissan of Montclair*, 801 S.W.2d 253, 254 (Tex. App.—Fort Worth 1990, writ denied). The Declaration states that the facts stated are within the declarant's personal knowledge, unless stated upon "information and belief."

4.   The Court should sustain MHA's objection and strike SANA's Declaration because it fails to comply with Rule 902(10)(B) and states that it is based on information and belief. Additionally, the Court should strike any documents attached to the Declaration.

5.   Metrocrest objects to SANA's Exhibit 1-C, May 18, 2022 Text chain between Mahalik and Leyhe. This exhibit purports to be a text message chain between John Mahalik and Bill Leyhe. The chain is purportedly a business record that SANA attempts to admit through the business records exception. *See* SANA's Exhibit 1 (Surapaneni Declaration).

6.   "A document authored or created by a third party may be admissible as business records of a different business if: (a) the document is incorporated and kept in the course of the testifying witness's business; (b) that business typically relies upon the accuracy of the contents of the document; and (c) the circumstances otherwise indicate the trustworthiness of the document." *Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 241 (Tex. App.-Houston [1st Dist.] 2010, no pet.) (citing *Bell v. State*, 176 S.W.3d 90, 92 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd)). SANA's Declaration is devoid of any predicate that shows this particular exhibit is SANA's business records. The Declaration makes no representation that SANA relied on the accuracy of the contents of the text chain and makes no indication of the trustworthiness of the text chain.

7.    The exhibit itself makes no showing that it would be a business record of SANA. The text chain fails to demonstrate any reliance by SANA on the text chain. There is no foundation for how SANA came into possession of the text chain. There is no foundation for the individuals that SANA claims to be the members of the text chain. It is otherwise not clear from the exhibit who is in the text string. This exhibit is hearsay.

8.    Metrocrest objects to SANA's Exhibits 1-E and 1-G, July 17, 2023 Email Thread between Weatherbie and Sladek and September 19, 2023 Email Thread between Tobin, Weatherbie and Collins, respectively. Tex. R. Evid. 408 states:

> **(a) Prohibited Uses.** Evidence of the following is not admissible either to prove or disprove the validity or amount of a disputed claim:
> **(1)** furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
> **(2)** conduct or statements made during compromise negotiations about the claim.

The emails in Exhibits 1-E and 1-G are settlement discussions between Metrocrest and SANA. SANA attempts to use it to prove/show part of its purported claim against Metrocrest. This is improper. *See id*.

9.    Metrocrest objects to paragraph 5 of the Declaration because Metrocrest's mandate is determined by statue and ordinance. Metrocrest asks that the Court take judicial notice that Metrocrest was created and is controlled by the Texas Municipal Hospital Authority Act, (the "Act"). The Affiant is not qualified to testify concerning the Act or Metrocrest's mandate. Paragraph 5 is hearsay and speculation.

10. Metrocrest objects to paragraphs 7 and 8 of the Declaration. Metrocrest never refused to sell the hospital to SANA. The declarant's statement that Metrocrest refused to sell the hospital to SANA is a legal conclusion.

11. Metrocrest objects to paragraph 9 of the Declaration because SANA could not and did not tender the Purchase Option Purchase Price. The attached exhibits are hearsay.

12. For these reasons, Metrocrest respectfully requests that the Court sustain these objections and strike SANA's Exhibits 1 and 1-A through 1-N.

## II.    OBJECTION TO SANA'S ARGUMENTS

13. Under Texas law, the nonmoving party in a motion for summary judgment is required to object to a movant who moves for summary judgment based on an unpled claim. *See e.g. Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex. 1991) (stating that affirmative defense may serve as basis for summary judgment if not otherwise objected to).

14. SANA has two live pleadings in this matter. Its August 29, 2024, First Amended Answer to Defendant/Counter-Plaintiff's Counter Claim ("SANA's Answer") and its June 21, 2024, Second Amended Petition ("SANA's Petition").

15. SANA failed to affirmatively plead in its Petition that the Lease Agreement ("Lease") and/or Purchase Option Agreement ("Purchase Option") were vague or ambiguous. *See* Sana's Petition. SANA's only mention of ambiguity is when in SANA's Answer states "[i]n the alternative, [Metrocrest's] claims are barred, in whole or in part, because the Lease Agreement is ambiguous." *See* SANA's Answer.

16. As a result of SANA's live pleadings, SANA cannot move for an affirmative summary judgment on ambiguity in the Lease or Purchase Option Agreement. SANA's Motion attempts to

convince the Court to read the option by combining the favorable terms of section 4.3 of the Lease with the favorable terms of the Purchase Option Agreement in addition to parol evidence. "When parties have entered into a valid, written, integrated contract, the parol evidence rule precludes enforcement of any prior or contemporaneous agreement that addresses the same subject matter and is inconsistent with the written contract." *West v. Quintanilla*, 573 S.W.3d 237, 243 (Tex. 2019)(citing *First Bank v. Brumitt*, 519 S.W.3d 95, 109–10 (Tex. 2017); *Hous. Expl. Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011); *Hubacek v. Ennis State Bank*, 159 Tex. 166, 317 S.W.2d 30, 31 (1958)).

### III.    Metrocrest's Evidence

Exhibit 1: Carrollton Regional Medical Center and MOB Plat;

Exhibit 2: Imaging Center Plat;

Exhibit 3: Employee Parking Lot Plat;

Exhibit 4: Survey;

Exhibit 5: November 19, 2019, Lease Agreement by and between Metrocrest and SANA;

Exhibit 6: November 20, 2019, Purchase Option by and between Metrocrest and SANA;

Exhibit 7: May 23, 2023, Krishna Surapaneni email to John Mahalik;

Exhibit 8: September 29, 2023, Krishna Surapaneni letter to John Mahalik; and

Exhibit 9: Declaration of John Mahalik.

Exhibit 10: Deposition of Krishna Surapaneni

17. To support the facts in this Response, Metrocrest includes the foregoing exhibits and incorporates the evidence into this Response by reference. Metrocrest asks that the Court take judicial notice of all pleadings filed in this case.

## IV.    Disputed Facts

18. Metrocrest will refer to SANA's Undisputed Factual Background paragraphs by reference to section and Metrocrest's own paragraph numbering within the section because SANA did not number its paragraphs . Metrocrest disputes and objects to the following facts that SANA claims are undisputed:

a.  As an initial and global objection to SANA's "Undisputed Factual Background," SANA uses this section to mischaracterize the facts and offer its opinions and argument. *See* SANA Motion.

b.  Metrocrest objects to ¶ A1. The statements are self-serving not supported by any evidence with an appropriate foundation and are irrelevant to the proceeding. Exhibit 10 (27:6-28:9). It only serves at as a poor attempt to gain judicial sympathy.

c.  Metrocrest objects to ¶ A2. Metrocrest's mandate is established by the Act and speaks for itself.

d.  Metrocrest objects to ¶ A3. Baylor can speak for itself. Any indication otherwise by SANA is hearsay and irrelevant. Exhibit 10 (27:6-28:9).

e.  Metrocrest denies and objects to ¶ A4. SANA misrepresents Mr. Heath's testimony. Motion Exhibit 3. Mr. Heath's deposition transcript speaks for itself. *Id.*

f.  Metrocrest objects to ¶ A5. The Lease speaks for itself. Exhibit 5.

g.  Metrocrest objects to ¶ A6. The Lease speaks for itself. SANA failed to exercise the Option in the Lease since it did not execute it timely or tender payment and otherwise provide Metrocrest the information necessary to close within the option period as defined by the Lease. *See* Exhibit 5.

h.  Metrocrest objects to ¶ A7. The Purchase Option Agreement is not incorporated into the Lease. *See* Exhibit 6.

i.  Metrocrest objects to ¶ A8. The Purchase Option Agreement was an amendment to the Lease and not executed together with or part of the Lease. The Purchaes Option Agreement speaks for itself. Exhibit 6.

j.  Metrocrest objects to ¶ B1. Who suggested Avison Young is irrelevant and without foundation. SANA Exhibit 1, ¶ 8 & SANA Exhibit. 1-A (SANA_LAWSUIT 001171); see SANA Ex. 3 at 47:6-20 & 56:22-57:10.

k.  Metrocrest denies ¶ B2. The Lease and Purchase Option Agreement speak for themselves. Exhibits 5 and 6.

l.  Metrocrest denies heading C. SANA did not properly notify Metrocrest in accordance with the Lease and/or Purchase Option Agreement. Exhibits 5 and 6.

m. Metrocrest objects to ¶ C1. SANA's email did not comply with the notice requirements in the Lease and/or Purchase Option Agreement. SANA's email only expressed an intent. It did not exercise any option. Exhibit 7; Exhibit 5 and 6.

n.  Metrocrest denies ¶ C2. SANA did not inform Metrocrest what it wanted replatted. *See* Exhibit 9.

Metrocrest objects to ¶ C3. Sana's statements are self-serving and hearsay. SANA Exhibit 4 162:20-23; SANA Exhibit 1.Additionally, SANA's Motion includes no term sheet that is supported by proper foundation. SANA Exhibit 1.

o.  Metrocrest denies and objects to Heading D. Metrocrest did not reject SANA's notice. SANA never sent proper notice under the Lease and/or Purchase Option Agreement. *See* Exhibit 9.

p.  Metrocrest denies and objects to ¶ D1. These statements are hearsay and barred the parol evidence rule. SANA has not pled that the Lease and/or Purchase Option Agreement are ambiguous in its live affirmative pleadings. The email in Exhibit 1-E is barred by Tex. R. Evid. 408. *See* SANA's Petition

q.  Metrocrest denies and objects to ¶ D3. Metrocrest did not reject SANA's notice. SANA never sent proper notice under the Lease and/or Purchase Option Agreement. Additionally, only the Purchase Option Agreement provides for the option period to extend to December 31, 2023, not the Lease Purchase Option Clause. *See* Exhibtis 6 and 9.

r.  Metrocrest denies ¶ D4. SANA did not exercise the Purchase Option Agreement. *See* Exhibits 6 and 7.

s.  Metrocrest denies ¶ D5 and D6. Metrocrest did not recject an exercise of the option. *See* Exhibit 9.

t.  Metrocrest denies ¶ D8 in that SANA had not exercised its option, so there was nothing to reiterate. Exhibits 5, 6, 7, 8.

u.  Metrocrest objects to Heading E. Metrocrest did not refuse to sell the Hospital to SANA. Exhibit 10.

v.  Metrocrest objects to ¶ E1 because SANA did not exercise the option, and Metrocrest did not reject SANA's purchase of the Hospital. Exhibits 5, 6, 7, 8, 10 (ln:pg).

w.  Metrocrest objects to ¶ E2 because there is no evidence of SANA's efforts to close the sale of the Hospital. There is no evidence SANA was ready, willing, and able to close. The terms sheets indicate no commitment to lend. Motion Exhibits 1-D, 1-I, 1-M.

x.  Metrocrest denies and objects to ¶ E3. Metrocrest denies SANA's recitation of the facts. SANA failed to establish that Metrocrest had any obligation to replat the Hospital and MOBs, and SANA failed to identify a boundary between the Hospital and MOBs. Exhibits 5, 6, 7, 8. Any expression of an intent as of December 11, 2023, is not within the deadline provided for under the Lease or Purchase Option Agreement. Exhibits 5, 6. Metrocrest did not refuse to sell the Hospital. Exhibit 10.

y.  Metrocrest denies and objects to ¶ E4. Metrocrest denies SANA's recitation of the facts. SANA failed to establish that Metrocrest had any obligation to replat the Hospital and MOBs, and SANA failed to identify a boundary between the Hospital and MOBs. Exhibits 5, 6, 7, 8.Metrocrest denies and objects to ¶ E5. Metrocrest did not refuse to sell the Hospital. Exhibit 10 (pg:ln). SANA was not ready, willing and able to complete the Hospital's sale at any time. Motion Exhibits 1-D, 1-I, 1-M. There is no evidence of SANA's characterization of the facts stated in ¶ E5. Metrocrest objects to SANA's mischaracterization of John Mahalik and Mike Collins' deposition testimony. The deposition transcripts speak for themselves.

z.  Metrocrest denies and objects to ¶ F1. Metrocrest did not breach the Lease. That is a question of law. Metrocrest did not refuse to sell the Hospital. Exhibit 10 (107:16-19; 218:6-12, 17-25).

aa. Metrocrest denies and objects to ¶ F2. Metrocrest did not refuse to sell the Hospital. Exhibit 10 (107:16-19; 218:6-12, 17-25).

bb. Metrocrest denies and objects to ¶ F3. Metrocrest's understanding of the lease is not within SANA's personal knowledge and is clearly articulated in its pleadings. SANA misrepresents the terms of the Lease and Purchase Option Agreement. *Compare* Motion *with* Exhibits 5, 6.

cc. Metrocrest denies and objects to Heading G. "A party may withdraw something from or add something to a pleading . . .." Tex. R. Civ. P. 502.7. Pleading amendments have long been a part of Texas jurisprudence. SANA cannot state that it is not familiar with this process because it has amended its own pleadings. However, it is clearly not familiar with Rule 502.7 or applicable jurisprudence. Metrocrest's amended pleadings are superseded. "Contrary to Statements in live pleadings, those contained in superseded pleadings are not conclusive and indisputable judicial admissions." *Sosa v. Cent. Power & Light*, 909 S.W.2d 893, 895 (Tex. 1995) (Because Sosas filed second amended original petition, it superseded their first amended original petition containing the statements on which the defendants based their motion for summary judgment); *McCormick v. Stowe Lumber Co.*, 356 S.W.2d 450, 458 (Tex. App.—Austin 1962, writ ref'd n.r.e.)

("[W]hen a pleading has been abandoned, superseded, or amended, it ceases to be a judicial admission.").

dd. Metrocrest denies and objects to ¶¶ G1-G2 for the same reasons identified concerning Heading G. Metrocrest's pleadings speak for themselves. SANA has an absence of understanding the Rules of Civil Procedure and clearly choses to mischaracterize Metrocrest's pleadings. These are not facts but rather misrepresentations to the Court and poorly constructed arguments lacking any foundation in law.

ee. Metrocrest objects to ¶ G2 because it attempts to use parol evidence. SANA has not affirmatively plead that the Lease and/or Purchase Option Agreement are ambiguous. Further, the option periods are clearly set forth in the Lease Purchase Option Clause and Purchase Option Agreement. Exhibit 5, 6.

ff. Metrocrest objects to ¶ G3. Metrocrest amended its pleadings which is not a judicial admission. Judicial estoppel only applies when a party is successful in a previous action. *See Ferguson v. Bldg. Materials Corp. of Am.,* 295 S.W.3d 642, 643 (Tex. 2009). This is the first action regarding any of these facts.

**V.    Undisputed Facts**

19. The following are undisputed facts in this case:

a. The Court entered its Scheduling Order and Discovery Control Plan, ("**DCO**"), on March 15, 2023.

b. The DCO provides that SANA's pleading deadline was July 29, 2024. DCO.

c. SANA's live pleading in this case is its June 21, 2024, Second Amended Petition ("Petition") and August 29, 2024, First Amended Answer to Defendant/Counter-Plaintiff's Counterclaim ("Answer").

d. Metrocrest owns the following real property:

<u>Carrollton Regional Medical Center and MOB Lot</u>



<u>Imaging Center Lot</u>



Employee Parking Lot Lot



more particularly described as (i) Lot 1R1 Block 1 Trinity Medical Center Addition, (ii) Lot 1 and part of Lot 2, Block A Golden Trail Addition and (iii) Lot 1, Block 1 Trinity Medical Center, Phase II Addition, respectively. (Collectively, the "**Real Property Lots**"). **Exhibits 1-3**; Petition ¶ 6.

    e.  Metrocrest owns the following improvements located on the Real Property Lots:

<u>Carrollton Regional Medical Center</u>



<u>Imaging Center</u>



Employee Parking Lot



MOBs



**Exhibit 4**; Petition ¶6.

f.  Metrocrest and SANA entered into a Lease and Purchase Option Agreement concerning the Hospital and MOBs.

g.  The Lease identifies November 19, 2019, as the date Metrocrest and SANA entered into the Lease. **Exhibit 5** (Lease Signature Page, SANA_LAWSUIT 00123); Petition ¶ 7.

h.  The Lease grants SANA the right to lease the Carrollton Regional Medical Center, Imaging Center and Employee Parking Lot from Metrocrest. Exhibit 5 (Lease, §§ 1.1.30, 1.1.52, 2.1.1, SANA_LAWSUIT 001020, 1024, 1030); Petition ¶¶ 6, 7.

i.  The Lease collectively defines the "(a) the Carrollton Hospital, (b) Imaging Center and (c) all parking areas identified in the Parking Lease" as the "Hospital." Exhibit 5 (Lease § 1.1.30, SANA_LAWSUIT 001020); Petition, Ex. 1.

j.  The Parking Lease is attached to the Lease as Exhibit A. Exhibit 5; Petition, Ex. 1.

k.  The Parking Lease defines the parking areas as the "Employee Parking Lot." Exhibit 5, (Lease, Ex. A, SANA_LAWSUIT 001125-43); Petition, Ex. 1.

l.  The Lease includes a Lease Purchase Option Clause, Exhibit 5(Lease, § 4.3; SANA_LAWSUIT 001033-34) The Lease Purchase Option Clause grants SANA the option to purchase the "Hospital" and "MOBs." Petition ¶ 8; Petition, Ex. 1.

m.  The Lease Purchase Option Clause provides that the purchase option to the MOBs may only be exercised if "the Hospital is also or has previously been purchased . . .." Exhibit 5 (Lease, § 4.3; SANA_LAWSUIT 001033-34); Petition ¶ 10; Petition, Ex. 1.

n.  The Lease Purchase Option Clause states that SANA has the right to purchase the Hospital and MOBs "during the first three years of the Lease Term." Exhibit 5 (Lease, § 4.3; SANA_LAWSUIT 001033-34); Petition, Ex. 1.

o.  The Lease defines the Lease Term as the period "beginning January 1, 2020" and ending December 31, 2025. Exhibit 5 (Lease, § 1.1.48; SANA_LAWSUIT 001023); Petition, Ex. 1.

p.  The Lease Purchase Option Clause, states that SANA was required to deliver a "minimum of three months'" prior written notice of its exercise of the option. Exhibit 5 (Lease § 4.3, SANA_LAWSUIT 001033-34)

q.  The Purchase Option Agreement identifies that it was executed the day after the Lease, November 20, 2019. **Exhibit 6** (Purchase Option Agreement, page 2); Petition, Ex. 1.

r.  The Purchase Option Agreement defines "the Hospital . . . and the four (4) Medical Office Buildings . . . collectively" as the "Property." Exhibit 6 (Purchase Option Agreement, page 1); Petition, Ex. 1.

s.  The Purchase Option Agreement states that it grants SANA the option to purchase the "Property." Exhibit 6 (Purchase Option Agreement, § 2.1); Petition, Ex. 1.

t.  The Lease includes a notice provision that requires all notices to be sent to both, Metrocrest's CEO, and Michael J. Collins. Exhibit 5 (Lease, § 27.7, SANA_LAWSUIT 001120-21); Petition, Ex. 1.

u.  On May 23, 2023, SANA's Chairman, Krishna Surapaneni, emailed Metrocrest's CEO, John Mahalik. (The "**Email**"). **Exhibit 7**; Petition, Ex. 2.

v.  The Email states that SANA intends to exercise the option for the "hospital real estate (Carrollton Regional Medical Center)." Exhibit 7; Petition, Ex. 2.

w.  The Email states that SANA "intends to complete the purchase within ninety days" of the Email, by September 1, 2023. *Id.*

x.  The Email states that SANA intends to exercise its option for the "medical office building soon." *Id*.

y.  On September 29, 2023, Dr. Surapeneni sent a letter to Metrocrest and notified Metrocrest of its intent "to purchase the Hospital (the Hospital including for all purposes, as provided in the Lease, the Carrollton Hospital, the Imaging Center and all parking areas identified in the parking lease attached to the Lease) . . .." (The "**Letter**"), **Exhibit 8**; Petition, Ex. 3.

z. The Letter states that Metrocrest was to complete, at "[Metrocrest]'s sole cost and expense . . . all actions necessary to convey the Hospital to [SANA] separate from the MOBs, including any necessary replatting [sic] of the Hospital and MOBs." *Id*.

aa. The Letter states that SANA "reserves its rights with respect to purchasing the MOB's at a later date." *Id*.

bb. As of December 31, 2022, SANA had not notified Metrocrest that it intended to exercise its option to purchase the Hospital or MOBs. *See* Petition.

cc. SANA's Petition asks the Court to find that Metrocrest breached the Lease by failing to sell the "Hospital" to SANA in the time prescribed by the "contract." Petition, ¶ 6.

dd. SANA's Petition defines the "Hospital" as the "Carrollton Regional Medical Center, an imaging center, and an employee parking lot." *Id.*

ee. SANA provides no evidence of financing and no evidence that it requested a replat of the hospital, what to replat, a closing date, or a purchase and sale agreement.

### VI.    ARGUMENTS AND AUTHORITIES

20. "A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018)(citing Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-216 (Tex. 2003)). "If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment." *Lujan*, 555 S.W.3d at 84(citing *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)). "In reviewing the grant of summary judgment, we must credit evidence favoring the non-movant, indulging every reasonable inference and resolving all doubts in his or her

favor." *Lujan*, 555 S.W.3d at 84 (citing *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995)).

21. "To be effective the exercise of an option must be absolute, unconditional, and in strict compliance with the terms and conditions of the options." *Hutton v. Methodist Home*, 615 S.W.2d 289, 292 (Tex. App.—Fort Worth 1981, writ ref'd n.r.e.); *Mohammed v. D. 1050 W. Rankin, Inc.*, 464 S.W.3d 737, 745 (Tex. App.--Houston [1st Dist.] 2014) (party to an option contract may enforce that option by strict compliance with the terms of the option); *see Zeidman v. Davis*, 161 Tex. 496, 342 S.W.2d 555, 558 (Tex. 1961); *see also Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 485 (Tex. 2017) (discussing waiver of the right to require strict compliance with the option's terms). "[A] failure to exercise an option according to its terms, including untimely or defective acceptance, is simply ineffectual, and legally amounts to nothing more than a rejection." *Comeaux v. Suderman*, 93 S.W.3d 215, 220 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citing *Crown Constr. Co., Inc. v. Huddleston*, 961 S.W.2d 552, 558 (Tex. App.—San Antonio 1997, no pet.)).

**A. SANA cannot show that Metrocrest breached the Lease under the terms of the Lease and/or Purchase Option Agreement.**

22. In its Motion, SANA attempts to argue that Section 4.3 of the Lease and the Purchase Option Agreement should be read together as one document. However, SANA does not plead that the Lease and Purchase Option Agreement create an ambiguity. "When parties have entered into a valid, written, integrated contract, the parol evidence rule precludes enforcement of any prior or contemporaneous agreement that addresses the same subject matter and is inconsistent with the written contract.

23. Despite its label, the parol evidence rule precludes enforcement of an alleged agreement, not merely the admission of evidence, and it does so regardless of whether the alleged agreement is oral or written." *West v. Quintanilla*, 573 S.W.3d 237, 243 (Tex. 2019)(citing *First Bank v. Brumitt*, 519 S.W.3d 95, 109–10 (Tex. 2017); *Hous. Expl. Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011); *Hubacek v. Ennis State Bank*, 159 Tex. 166, 317 S.W.2d 30, 31 (1958).

24. SANA argues that it can cherry pick the favorable terms of the Lease and Purchase Option Agreement to fit its needs without pleading ambiguity. Nowhere in its affirmative pleadings does SANA plead that the Lease or Purchase Option Agreement is ambiguous. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex. 1991)(stating that affirmative defense may serve as basis for summary judgment if not otherwise objected to). Without waiving that the Purchase Option Agreement and  Lease Purchase Option Clause are unambiguous, even if SANA is allowed to apply the Lease Purchase Option Clause to the terms of the Purchase Option Agreement, it cannot in good faith argue that only the favorable terms of the extended option period apply and not the unfavorable terms of the collective "Property" to be sold.

### i.  SANA failed to exercise its right to purchase under the Lease.

25. Section 4.3 of the Lease provides in relevant part sates:

4.3.    Purchase Option and Right of First Offer. For the right to purchase the Hospital and the four medical office buildings on campus (the "MOBs") at any time during the first three years of the Lease Term (the "Purchase Option"), Tenant shall make a Purchase Option payment upon Lease execution of ONE MILLION AND NO/100 DOLLARS ($1,000,000.00) (the "Purchase Option Payment"). The Purchase Price under the Purchase Option shall be a total of THIRTY ONE MILLION AND NO/100 DOLLARS ($31,000,000.00) (SIXTEEN MILLION AND NO/100 DOLLARS ($16,000,000.00) for the Hospital and FIFTEEN MILLION AND NO/100 DOLLARS ($15,000,000.00) for the MOBs), (collectively the "Purchase Option Purchase Price"). The Purchase Option Payment shall be credited toward the Purchase Option Purchase Price for the Hospital if the Purchase Option for the Hospital is executed. The Purchase Option on the MOBs may only be exercised if the Hospital is also or has previously been purchased, and closing of the purchase under the Purchase Option must take place within three years of the Lease Commencement Date. (1) If the Purchase Option is not consummated within three years of the Lease Commencement Date, unless due to the default of MHA, MHA shall retain the Purchase Option Payment. (2) Tenant will be required to deliver a minimum of three months' prior written notice of its exercise of the Purchase Option. (3) After expiration of the Purchase Option and continuing through the end of the Lease Term, Tenant shall have a right of first offer ("ROFO") to purchase the Hospital and MOBs. Under the ROFO, if Landlord desires to sell the Hospital and the MOBs, Landlord must provide 60-days' notice to Tenant, during which time, Tenant shall have the

METROCREST HOSPITAL AUTHORITY - LEASE AGREEMENT    BAYLOR MEDICAL CENTER AT CARROLLTON
PAGE 19 OF 114

right to make a proposal to purchase the Hospital and MOBs from Landlord ("Tenant's Proposal"). For the 30 days post-Tenant proposal, Landlord and Tenant shall negotiate in good faith the terms of such sale, after which time if no agreement on price and terms is reached, Landlord shall be free to sell the Hospital and MOBs to any other party, subject to the Lease remaining in place. The Purchase Option Agreement shall be executed together with this Lease and is attached hereto as EXHIBIT "F". Upon the acquisition of the Hospital (and the MOBs, if applicable), this Lease and the Guaranty(s) shall be automatically deemed terminated, the Security Deposit shall be returned to Tenant, and the parties shall be relieved of all obligations and liabilities hereunder (other than those which expressly survive termination hereof.) The provisions of Article XXI shall not apply.

Exhibit 5.

26. The Lease Purchase Option Clause provides that SANA had the right to purchase the Hospital and MOBs within the first three years of the Lease:

For the right to purchase the Hospital and the four medical office buildings on campus (the "MOBs") at any time during the first three years of the Lease Term (the "Purchase Option"), Tenant shall make a Purchase Option payment upon Lease execution of ONE MILLION AND NO/100 DOLLARS ($1,000,000.00) (the "Purchase Option Payment").

Exhibit 5 (Lease, § 4.3; SANA_LAWSUIT 001033-34). To exercise the Purchase Option under the Lease Purchase Option Clause, SANA was,

> required to deliver a minimum of three months' prior written notice of its exercise of the Purchase Option.

*Id*. SANA was, also, obligated to consummate the purchase "within three years of the Lease Commencement Date." *Id*.

27. The "Lease Term" began on January 1, 2020:

> 1.1.48. "**Lease Term**" shall mean five (5) years beginning January 1, 2020 and ending December 31, 2025. Notwithstanding the foregoing, Tenant may extend the Term of this Lease for up to one (1) extension period of five (5) years ("**Renewal Period**"), upon all of the terms set forth in this Lease. Tenant may do so only if a Tenant Default shall not exist under this Lease at the time of any such election, and by giving Landlord notice of each such election ("**Extension Notice**") not later than eighteen (18) months prior to the expiration of the then current Term.

Exhibit 5 (Lease, SANA_LAWSUIT 001023). The third year of the Lease Term ended on December 31, 2022.

28. The Lease Purchase Option Clause obligates SANA to notify Metrocrest of its exercise of the Purchase Option no later than September 30, 2022, and close the purchase no later than December 31, 2022. *Id.* at § 4.3 (SANA_LAWSUIT 001033-34).

29. Without waiving that the Email did not satisfy the notice requirements under the Lease, SANA did not send the Email until May 23, 2023. Exhibit 7. The Email was sent almost eight

months after the notice deadline provided for in the Lease Purchase Option Clause. *Id;* Exhibit 5 (Lease, § 4.3; SANA_LAWSUIT 001033-34). SANA sent the Letter after the Email.

30. Therefore, SANA failed to comply with the Lease Purchase Option Clause. *See* Exhibit 5 (Lease § 4.3; SANA_Lawsuit001033-34).

### ii. The Purchase Option Agreement amends the Lease, and SANA cannot show it exercised the option to purchase provided for in the Purchase Option Agreement.

31. SANA's Petition argues that the Lease *and* Purchase Option Agreement provide SANA the right to purchase the Hospital separate from and before the MOBs. Specifically, the Petition states that the Lease Purchase Option Clause in the Lease "sets forth [SANA's] requirements to execute the [p]urchase [o]ption . . . [and] establishes that the Hospital may be purchased by itself . . .." Petition ¶ 10. The Petition states that the Purchase Option Agreement "sets forth the requirements to elect the option to purchase either the Hospital and the MOBs or the Hospital." *Id.* at ¶ 8.

32. Metrocrest and SANA entered into the Purchase Option Agreement after the Lease. Metrocrest contends that to enforce the option provided for in the Purchase Option Agreement, SANA must rely on the terms provided in the Purchase Option Agreement. Because the Lease and Purchase Option Agreement provide distinct deadlines and definitions of the property to be purchased, SANA cannot cherry pick terms of the Lease Purchase Option Clause and drop them into the Purchase Option Agreement.

33. The terms of the Lease Purchase Option Clause are set forth in section vi.a.i., above. **Exhibit 5** (Lease § 4.3). The Purchase Option Agreement states the following:

This **PURCHASE OPTION** (the "Option") is entered into on November 20, 2019, and effective on February 29, 2020, between the **METROCREST HOSPITAL AUTHORITY**, a Texas municipal hospital authority, ("MHA") and **SANA HEALTHCARE CARROLLTON, LLC** (the "SANA") regarding the purchase of the Hospital ("Hospital") and the four (4) Medical Office Buildings ("MOBs") (collectively herein the "Property").

## I.
## PROPERTY

**1.1** **The Property.** The Hospital previously operated by Baylor Scott & White and known as Baylor Scott & White -- Carrollton and the four MOBs located on the campus contiguous to the Hospital, more particularly described as located at Hebron Parkway and Josey Lane, City of Carrollton, Denton County, Texas together with the land specifically described in **EXHIBIT 1** hereto.

## II.
## OPTION

**2.1** **Purchase Option.** For and in consideration of the payment of the Option Fee, MHA grants SANA the option to purchase the Property for the Purchase Price as defined below.

**2.2** **Option Fee.** The Option Fee is a non-refundable payment of ONE MILLION AND NO/100 DOLLARS ($1,000,000.00), payable upon execution of this Option.

**2.3** **Option Period.** The Option Period begins as of the execution of this Option and expires on December 31, 2023.

**2.4** **Notice of Option to Purchase.** Tenant is required to deliver to Hospital/Landlord, a minimum of three (3) months prior written notice of its intent to exercise the Purchase Option.

## III.
## PURCHASE PRICE

**3.1** **Purchase Price.** The Purchase Price for the Property is THIRTY-ONE MILLION AND NO/100 DOLLARS ($31,000,000.00), defined as follows:

    (a)   **Hospital Purchase Price:** SIXTEEN MILLION AND NO/100 DOLLARS ($16,000,000.00); and

    (b)   **MOB Purchase Price:** FIFTEEN MILLION AND NO/100 DOLLARS ($15,000,000.00).

**3.2**     <u>Credit for Option Fee</u>.  The Option Fee will be credited towards the Purchase Price of the Property if purchased during the Option Period.

**AGREED** on the 20th day of November , 2019 (the "Effective Date").

<u>Notice to MHA:</u>
Charles B. Heath, CEO
Metrocrest Hospital Authority
4325 North Josey, Suite 107
Carrollton, Texas 75010

<u>With Required Copy To</u>
Michael J. Collins
The Collins Law Group
8350 North Central Expwy., Suite 950
Dallas, Texas 75206

APPROVED AS TO FORM:

By: _____
MICHAEL J. COLLINS, *Authority Attorney*
The Collins Law Group
8350 N. Central Expwy., Suite 950
Dallas, TX 75206
214-379-0950 Telephone
214-379-0951 Facsimile

METROCREST HOSPITAL AUTHORITY

By: _____
CHARLES B HEATH, CEO
Metrocrest Hospital Authority
4325 North Josey, Suite 107
Carrollton, Texas 75010
972-247-8023 Telephone
972-247-8095 Facsimile

SANA HEALTHCARE CARROLLTON, LLC

By: _____
KRISHNA P. SURAPANENI

Its:     Managing Director
112 E. Amerige Ave., Suite 205
Fullerton, California 92832

Exhibit 6 (Purchase Option Agreement, pp. 1, 2). Section 2.5 of the Purchase Option Agreement is intentionally omitted because it has no relevance to the Motion or this Response.

34. The Lease Purchase Option Clause includes provisions that provide a caveat to the purchase of the Hospital and MOBs. (The Lease MOB Provision). The Lease MOB Provision is only contained within the Lease Purchase Option Clause; it is no contained in the Purchase Option Agreement. The MOB Provision states that SANA could only exercise the option for the MOBs if SANA purchased the Hospital together with or before the MOBs:

> The Purchase Option on the MOBs may only be exercised if the Hospital is also or has previously been purchased,

> Upon the acquisition of the Hospital (and the MOBs, if applicable), this Lease and the Guaranty(s) shall be automatically deemed terminated, the Security Deposit shall be returned to Tenant, and the parties shall be relieved of all obligations and liabilities hereunder (other than those which expressly survive termination hereof.)

Exhibit 5 (Lease, § 4.3; SANA_LAWSUIT 001033-34).

35. The Purchase Option Agreement provides SANA with the option to purchase the "Property":

> **2.1    Purchase Option.** For and in consideration of the payment of the Option Fee, MHA grants SANA the option to purchase the Property for the Purchase Price as defined below.

Exhibit 6. The Purchase Option Agreement defines Property as the Hospital *and* MOBs—collectively:

> This **PURCHASE OPTION** (the "Option") is entered into on November 20, 2019, and effective on February 29, 2020, between the **METROCREST HOSPITAL AUTHORITY**, a Texas municipal hospital authority, ("MHA") and **SANA HEALTHCARE CARROLLTON, LLC**, (the "SANA") regarding the purchase of the Hospital ("Hospital") and the four (4) Medical Office Buildings ("MOBs") (collectively herein the "Property").

> **1.1    The Property.** The Hospital previously operated by Baylor Scott & White and known as Baylor Scott & White -- Carrollton and the four MOBs located on the campus contiguous to the Hospital, more particularly described as located at Hebron Parkway and Josey Lane, City of Carrollton, Denton County, Texas together with the land specifically described in **EXHIBIT 1** hereto.

*Id*. The Purchase Option Agreement contains no terms that provide SANA an option to purchase the Hospital separate from or before the MOBs. *Id.*

36. The Motion reasons that SANA is entitled to rely on the option period in the Purchase Option Agreement—December 31, 2023,—and the Lease MOB Provision in the Lease Purchase Option Clause. SANA must pick the Lease Purchase Option Clause or the Purchase Option Agreement.

37. SANA's pleadings and Motion do not make that choice. SANA leaves the Court and Metrocrest with the task of guessing how they are supposed to arrive at SANA's confused interpretation of the Lease Purchase Option Clause and Purchase Option Agreement.

### iii.  SANA failed to exercise the Purchase Option Agreement.

38. Without waiving that the language of the Purchase Option Agreement differs from the terms of the Lease, even if SANA intended to exercise the option under the Lease Purchase Option Clause, SANA's Email failed to "exercise" the option to purchase the Hospital and was sent after the expiration of the option period in the Lease. SANA's email only notified Metrocrest of its "intent" to exercise the purchase of the Hospital. *See* Exhibit 7. It did not actually exercise the option or otherwise tender payment to Metrocrest.

39. The Lease Purchase Option Clause states that SANA must provide "notice of its exercise" of the option and provides SANA the option to purchase the Hospital, which the Lease specifically

defines as the Carrollton Regional Medical Center, Imaging Center and Employee Parking Lot. Exhibit 5 (Lease, §§ 1.1.30, 4.3, SANA_LAWSUIT 001020, 001033-34).

40. The Email states SANA's "intent" to exercise the option as to the "hospital real estate (Carrollton Regional Medical Center)." Exhibit 7. The Email only shows an intent and spells hospital with a lower case "h." *Id*. Hospital is capitalized in the Lease. Exhibit 5 (Lease §§ 1.1.30, 4.3, SANA_LAWSUIT 1033-34). The Email does not "exercise" the option or identify the Hospital. Exhibit 7.[1]

41. The Lease Purchase Option Clause does not identify the right to purchase the Carrollton Regional Medical Center separate from or before any of the other property. *Id*.

42. The Email, also, indicates an intent to exercise the option for the medical office "building." Exhibit 7. Under the Lease, there are four MOBs, not one. Exhibit 5 (Lease § 4.3). Accordingly, the Email does not strictly comply with the terms of the Lease and, therefore, cannot exercise the option.

43. Without waiving the Purchase Option Agreement's amendment of the Lease Purchase Option Clause, even if the Court assumes the Lease incorporated the terms of the Purchase Option Agreement, it must harmonize the terms of each. *See Barrow-Shaver Res. Co v. Carrizo Oil & Gase, Inc.*, 590 and S.W.3d 471, 479 (Tex. 2019). The Lease Purchase Option Clause includes the Lease MOB Provision and states, that SANA must exercise the option within three years of the commencement date of the Lease. The Purchase Option Agreement (i) does not include the

---

[1] The Purchase Option Agreement provided prices for the hospital and MOBs for tax reasons. The Internal Revenue Code requires the determination of sale price and original basis in order to determine capital gains taxes when selling assets such as this property. The amounts listed in the lease are a reflection of this in order to assist in Metrocrest's tax obligations. *See* 26 U.S.C. §§ 1202-1260.

Lease MOB Provision, (ii) provides that SANA must purchase both Property, i.e. the Hospital and MOBs collectively and (iii) provides a deadline of December 31, 2023, to exercise the option. Because the Lease Purchase Option Clause provides a different deadline, the Lease Purchase Option Clause can be harmonized with the terms of the Purchase Option Agreement. The Purchase Option Agreement does not include the Lease MOB provision. If SANA wanted to purchase pursuant to the terms of the Lease MOB Provision, it had to do so under the Lease Purchase Option Clause.

44. Under SANA's own case law, *Barrow-Shaver Res. Co v. Carrizo Oil & Gase, Inc.*, 590 and S.W.3d 471, 479 (Tex. 2019) and *Nettye Engler Energy, LP. v. BlueStone Nat. Res. II, LLC,* 693 S.W.3d 382, 690 (Tex. 2022), SANA has shown no law or evidence that the meaning of the Lease Purchase Option Clause and Purchase Option Agreement together defeat the parties' intent.

45. Even if the Parties' intended the option period to be December 31, 2023, that is provided under the Purchase Option Agreement. Even if the Parties intended to allow SANA to purchase the Hospital first that is provided under the Lease MOB Provision.

46. There is no construction of the these terms that would defeat what SANA has shown was the Parties' intent even though the terms of the Lease Purchase Option Clause and Purchase Option Agreement differ. SANA alleges Metrocrest always intended that the option period extended to December 31, 2023. Without waiving the provisions of section 4.3 of the Lease, if that was the case, then the Purchase Option Agreement applies, and SANA only had the option to purchase the "Property," i.e. the Hospital and MOBs. Under that scenario, the MOB Provision in the Lease Purchase Option Clause would not apply.

> ***iv.    In the alternative, if the Lease and/or Purchase Option Agreement are ambiguous and parol evidence applies, SANA cannot show a breach by Metrocrest.***

47. Without waiving Metrocrest's contention that the Lease and Purchase Option Agreement are unambiguous, even if the Court finds that they are, under the statute of frauds, material modifications to a lease agreement must be in writing and signed by the party against whom the modification is to be enforced. *See* Tex. Bus. & Com. Code Ann. § 26.01(a), (b)(5) (West 2014); *Lawrence v. Reyna Realty Group*, 434 S.W.3d 667, 673 (Tex. App.—Houston [1st Dist.] 2014, no pet. h.) (citing *SP Terrace, L.P. v. Meritage Homes of Tex., LLC*, 334 S.W.3d 275, 282 (Tex. App.—Houston [1st Dist.] 2010, no pet.); see also *Columbia/HCA of Houston, Inc. v. Tea Cake French Bakery & Tea Room*, 8 S.W.3d 18, 21 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (finding that written agreement would have to exist for party to be obligated to pay relocation expenses in exchange for early surrender of lease). "Texas courts have held that parol evidence cannot be used to supply the 'essential elements' of [a] contract and that lease documents that were not in existence at the time the contract was executed do not satisfy the statute of frauds." *Moore v. Bearkat Energy Partners, LLC*, No. 10-17-00001-CV, 2018 WL 683754, at *5 (Tex. App.—Waco Jan. 31, 2018, no pet.) (citing *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex. 1972); *Wilson v. Fisher*, 144 Tex. 53, 54, 188 S.W.2d 150, 152 (1945)); *see also West v. Quintanilla*, 573 S.W.3d 237, 243 (Tex. 2019) ("parol evidence rule precludes enforcement of an alleged agreement, not merely the admission of evidence, and it does so regardless of whether the alleged agreement is oral or written . . .. It is not an evidence rule but a substantive rule of law").

48. In his deposition, Dr. Surapaneni specifically and unequivocally states:

Q.     And did SANA provide this rent roll to its lenders?

A.     If the lenders were asking, you know, Michael Kennedy must have provided it.  And Michael Kennedy requested these documents, the MOBs' rent rolls, and then we requested from John Mahalik several times these things.  And my assumption is -- as I said earlier, he wanted to close the hospital, followed by the medical office buildings, and then he must be trying for -- you know, to get the funding.

Exhibit 10 (107:10-19).

6      A.    Okay.  Radha and Krishna, I just spoke with

7    John Mahalik, he was headed to the airport for his

8    trip to Greece, but he was happy to hear that things

9    are advancing.  He suggested that I reach out to Mike

10   Collins directly on defining exact boundaries between

11   the properties.  John wants us to reach a common

12   sense agreement on this so we can move this forward.

13     Q.    Okay.  You can stop there.

14            Did you believe Mr. Mahalik wanted to

15   advance the sale?

16            MS. LANIER:  Objection, form.

17     A.    Mr. Mahalik has always wanted to have a

18   resolution.

19            (Reporter clarification)

20     A.    Mr. Mahalik, he wanted to have a resolution

21   to this problem.  He wanted to sell the hospital and

22   he wanted to held the hospitals a while, and he

23   wanted to have all the working land built up with

24   assisted living facilities to support the hospital.

25   And I have no doubt about his intentions.

*Id.* (218:6-25).

49. Regardless of whether the Lease Purchase Option Clause or Purchase Option Agreement

applies, Dr. Surapaneni admits that it was always Metrocrest's intent to sell SANA the Hospital

and MOBs. *See Exhibit 9.*

50. Therefore, even if parol evidence is admitted, SANA admitted that Metrocrest never refused to sell, and it was always Metrocrest's intent to sell the Hospital and MOBs to SANA. SANA did not exercise the option and, therefore, cannot show Metrocrest breached or that SANA properly exercised its option to purchase. *See* Exhibit 9. Therefore, SANA's Motion fails as a matter of law.

**B.  SANA cannot show that it was ready, willing, and able.**

51. In the context of option contracts, the Supreme Court states that:

An essential element in obtaining the equitable remedy of specific performance is that the party seeking such relief must plead and prove he was ready, willing, and able to timely perform his obligations under the contract. In 1938, we stated: 'The doctrine is fundamental that a party seeking the remedy of specific performance ... must show himself to have been ready, desirous, prompt, and eager.' These principles have been long recognized and respected by the Courts of Texas . . . [T]o be entitled to specific performance, the plaintiff must show that it has substantially performed its part of the contract, and that it is able to continue performing its part of the agreement. The plaintiff's burden of proving readiness, willingness and ability is a continuing one that extends to all times relevant to the contract and thereafter."

It is also a general rule of equity jurisprudence in Texas that a party must show that he has complied with his obligations under the contract to be entitled to specific performance. *Glass v. Anderson,* 596 S.W.2d 507, 513 (Tex.1980) ("A party who asks a court of equity to compel specific performance of a contract must show his own compliance with the contract."); *Bell v. Rudd,* 144 Tex. 491, 191 S.W.2d 841, 844 (1946); *see also Wilson v. Klein,* 715 S.W.2d 814, 822 (Tex.App.-Austin 1986, writ ref'd n.r.e.) ("Generally speaking, it is a prerequisite to the equitable remedy of specific performance that the buyer of land shall have made an actual tender of the purchase price ... [unless] actual tender would have been a *useless act* .... " (citation omitted)). As a consequence, a plaintiff seeking specific performance, as a general rule, must actually tender performance as a prerequisite to obtaining specific performance. *McMillan v. Smith,* 363 S.W.2d 437, 442–43 (Tex.1962).

*DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593–94 (Tex. 2008) (citations omitted).

52. "When a party alleges it is ready, willing, and able to perform under the terms of a contract, but is relying on third-party financing, the party must show it had a firm commitment

for financing, or it will not be entitled to specific performance." *Meshki, Inc. v. Bilal*, No. 05-23-00885-CV, 2024 WL 2513339, at *5 (Tex. App.—Dallas May 24, 2024, no pet.); *Heights Prop. Mgmt., LLC v. Scales*, No. 01-22-00750-CV, 2024 WL 4536140, at *4 (Tex. App.—Houston [1st Dist.] Oct. 22, 2024, no pet. h.); *Elijah Ragira/VIP Lodging Group, Inc. v. VIP Lodging Group, Inc.*, 301 S.W.3d 747, 755 (Tex. App.—El Paso 2009, pet. denied).

53. SANA cannot show it was ready, willing, and able to purchase the Hospital. Without waiving Metrocrest's previous objections to hearsay, the only evidence SANA attaches to its Motion to support its proposition that it was ready, willing, and able are term sheets. *See* SANA Exhibits 1-D, 1-I, and 1-M. Yet, these term sheets specifically state:

> **NOTICE:** This Loan Request Summary is for informational purposes only and does not obligate Lender in any way to make this loan or any other loan to Borrower. The fees and charges listed above are estimates only; and, if a loan is made, different or additional fees and charges may be imposed.

SANA Exhibit 1-D.

> This proposal is subject to the Bank's credit review, underwriting, and other internal approvals, is not a binding commitment to extend credit, and is not an attempt to define all the terms and conditions which may be included in final documentation should the loan be approved.
>
> By signing below, you authorize the bank and its affiliates, to obtain and use credit reports, process your financing request, process any requested changes to your accounts, review performance of your accounts and to collect any credit extended to you. It is understood that a photocopy of this form will also serve as authorization. You understand that you must update this credit information at Bank's request and/or if your financial condition changes. You acknowledge that the credit being applied for will be used for business purposes.

SANA Exhibit 1-I.

This proposal is subject to the Bank's credit review, underwriting, and other internal approvals, is not a binding commitment to extend credit, and is not an attempt to define all the terms and conditions which may be included in final documentation should the loan be approved.

By signing below, you authorize the bank and its affiliates, to obtain and use credit reports, process your financing request, process any requested changes to your accounts, review performance of your accounts and to collect any credit extended to you. It is understood that a photocopy of this form will also serve as authorization. You understand that you must update this credit information at Bank's request and/or if your financial condition changes. You acknowledge that the credit being applied for will be used for business purposes.

SANA Exhibit 1-M.

54. SANA demonstrates through its own evidence that it did not secure financing for the purchase of the hospital. SANA provides no evidence of financing and no evidence that it requested a replat of the hospital, what to replat, a closing date, or a purchase and sale agreement. Further, SANA shows no evidence it needed any of these items to actually procure a firm commitment to financing. This is SANA's burden.

55. Therefore, as a matter of law SANA cannot show in any way, that it was ready, willing, and able to perform.

56. Further, in its Motion, SANA argues that Metrocrest repudiated the option contract. However, it  cannot produce any evidence that Metrocrest repudiated. Contrary to this contention, Metrocrest was willing, throughout, to sell the property. *See* Exhibits 9; 10 (218:6-25).

57. Because SANA cannot show that it exercised its option to purchase, that Metrocrest breached the option to purchase, or that it was ready, willing, and able to close, SANA's Motion must fail as a matter of law.

**VII.    Conclusion**

58. Since SANA cannot show Metrocrest breached the Lease, SANA did not exercise the option to purchase, and SANA cannot show it was ready, willing, and able, this Court should deny SANA's Motion.

WHEREFORE, PREMISES CONSIDERED, Metrocrest respectfully prays that the Court sustain its objections to SANA's evidence and deny SANA's Motion.

Respectfully submitted,

HAYES, BERRY, WHITE & VANZANT, LLP

    /s/   Cody J. Lewis
Richard D. Hayes
State Bar No. 09278700
Cody J. Lewis
State Bar No. 24074595
David B. Kruger
State Bar No. 24120953

512 W. Hickory Street, Suite 100
Denton, Texas 76201
Telephone: 940-387-3518
Facsimile: 866-576-2575
Email: rhayes@hbwvlaw.com
Email: clewis@hbwvlaw.com
Email: dkruger@hbwvlaw.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing instrument was served upon the attorneys of record of all parties to the above cause in accordance with Rule 21a, Texas Rules of Civil Procedure, on this _6_ day of December 2024.

/s/Cody J. Lewis
Cody J. Lewis